Page 40

```
 1   page.
 2              THE COURT:  And then the following
 3   transcript on March 15, 2018, at Page 63, Line 6,
 4   "There is such a thing as prebankruptcy planning.
 5   And efforts to hinder, delay, or defraud creditors
 6   on the eve of bankruptcy would often justify
 7   dismissal for cause.  But the asset protection
 8   plan here was formed in 2012."
 9              MR. HURST:  Uh-huh.
10              THE COURT:  And then it goes, "It was
11   just planning."  But that Court when it made its
12   ruling at Page 64 where it says that it has no
13   household income was unaware of the testimony that
14   I heard here regarding the additional income that
15   was hidden in Mrs. Zilberbrand that actually was
16   income of Mr. Zilberbrand.  And so I had cautioned
17   all the parties regarding that line of testimony,
18   because I understand that there is some additional
19   motion in the bankruptcy court.  I don't know what
20   it is.  But the last thing that we would want here
21   would be for debts that had been discharged to
22   then be opened up again if the bankruptcy court
23   realizes what was really going on.
24                         I do not find your client
```



Page 41

1  credible about his lack of ability to make income
2  in light of the fact that he's hiding assets from
3  the bankruptcy court and that he's speaking out of
4  both sides of his mouth to this Court.  He has
5  testified on several different days several
6  different ways about what it was that those two 60
7  some and 90 some thousand deposits were.  And so
8  if I don't find him to be convincing about that,
9  then you don't have a sufficient amount of
10 evidence to win this motion.  So I would encourage
11 you to address that.
12             MR. HURST:  Fine. Okay. Let's say
13 for the sake of discussion that you consider the
14 $63,000 in 2018 to be income to him.  It's gross
15 income set off against expenses for trying to do
16 that.  Just like in the 2017 return there is a
17 schedule and there are expenses that were incurred
18 relative to these -- to the production of income.
19             THE COURT:  And then I find him to be
20 lying about that.  When I say "lack of candor," I
21 mean he is lying.  And so --
22             MR. HURST:  Lying about --
23             THE COURT:  -- let me be clear.  Let
24 me be completely clear.  And so you call into



Page 45

1  payments --
2              THE COURT: Which he hasn't made a
3  single payment back.
4              MR. HURST: Because he's had no
5  income. And with the exception of that one
6  payment that was received, the $63,000 in 2018,
7  which is the only relevant time period here,
8  because we're not seeking modification back to
9  2017, okay, he has borrowed that money and he has
10 cannibalized the remaining assets that he has to
11 pay that rent. And there's been no evidence to
12 contradict that. And if you take the money that
13 he claims to have borrowed over the past year or
14 so, the $50,000, the money that was residual from
15 the $63,000 and the money he has cannibalized from
16 his remaining assets to pay his expenses, that's
17 how it's been done.
18              Now the Court's critique of
19 Mr. Zilberbrand and his lifestyle is nothing --
20 that's the Court's opinion. None of that was
21 sufficient to give rise to the Court finding that
22 he was not credible.
23             THE COURT: But that Court didn't
24 know about the income he was hiding under his



Page 46

1  wife's name.
2        MR. HURST: Okay. All of $97,000
3  gross income on a referral fee.
4        THE COURT: Which is twice the
5  amount -- nearly twice the amount of income that
6  he was stating in the agreed order where it was
7  reduced to $2,750 that he was making.
8              Anything further?
9        MR. HURST: Excuse me. You know,
10  Counsel pointed to comments that the Court made in
11  the pretrial. The Court made a comment to me in
12  pretrial with Counsel present that it was clear
13  that he was cannibalizing his assets to sustain
14  these payments and the lifestyle. Okay. So
15  what's good for the goose is good for the gander.
16  That's -- and that is absolutely consistent with
17  what the evidence has shown. He has cannibalized
18  those assets. Those assets are gone and for the
19  Court to suggest he should be held to $33,000 in
20  net payments against $45,000 in gross income and
21  he should find some way to live on taxable income
22  of a thousand dollars a month is absolutely
23  preposterous. It's contrary to public policy. He
24  has a right to live, too. That's why child

